UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES S. BAILEY, | ) | 1:05cv0712 AWI DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Charles Bailey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications for disability insurance and SSI benefits in June 2002. AR 67-69, 402-404. He alleged disability since June 13, 2001, due to major depression, anxiety, memory loss, mental and physical fatigue, headaches and neck/shoulder pain. AR 83. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 54-57, 59-62, 63. On September 16, 2004, ALJ Bert Hoffman held a hearing. AR 411-441. ALJ Hoffman denied benefits on October 28, 2004. AR 9-20. On April 1, 2005, the Appeals Council denied review. AR 4-6.

<u>Hearing Testimony</u>

ALJ Hoffman held a hearing on September 16, 2004, in Fresno, California. Plaintiff appeared with his attorney, Dennis Bromberg. AR 411.

Plaintiff testified that he was born in 1952. He lost 15-20 pounds in the last year because of depression, anxiety and stress. AT 416-417. He completed four years of college but did not earn a degree. AR 417.

Plaintiff last worked at Chowchilla State Prison in 2001. He started working for the California Department of Corrections in 1995. AR 417. He began at Corcoran State Prison as a post in the gun tower. AR 418. He remained at Corcoran until 2000, when he transferred to Chowchilla. AR 419. He transferred to try and "salvage" his job after an episode of depression in 1998 and some other events. AR 419. He worked as a dorm officer on the graveyard shift because he thought it would be better for him. AR 419. He had to watch for suicide attempts and be mentally and physically alert at all times. AR 419. He got to the point where he could no longer function and stopped in June 2001. AR 420.

From 1990 to 1995, Plaintiff worked as a group counselor in Fresno County Juvenile Hall. AR 420.

Plaintiff testified that he cannot currently get treatment for his depression and anxiety because he doesn't have medical coverage. AR 421. In the past, he has seen doctors and taken

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Wellbutrin, which helped his depression. AR 422-423. Plaintiff testified that despite the medication and counseling, he was never at a point where he could have worked. AR 423.

When questioned by his attorney, Plaintiff indicated that he has problems focusing and concentrating on things. He also has problems with short-term memory and couldn't boil an egg without forgetting. AR 424. He has crying spells from time to time, about once every couple of weeks. AR 424. He doesn't take part in social activities and pretty much stays to himself. AR 425.

Plaintiff's older son is 18 years old and has lived with his mother since 2002. He does not see him often. AR 425-426. He has an older son and grandchildren, who he sees occasionally. AR 428.

Plaintiff last played basketball about 2-3 months ago. He enjoys reading, and reads mainly the Bible and sometimes a newspaper or old car magazine. He tries to walk and ride his bicycle for exercise. AR 431. He attends church. AR 433. He enjoys classic cars. AR 436.

Plaintiff rents a room and during a typical day, stays in his room. AR 435. He sometimes reads, watches television, or just sits in his chair. He goes grocery shopping, but can't afford to go too often. AR 436. He has thought about hurting himself to stop the pain and depression. AR 436.

Plaintiff testified that he would like to get back to counseling and get medication until he gets to the point where he can get back with the kids, perhaps running a group home. AR 437.

<u>Medical Evidence</u>

On June 15, 2001, Plaintiff saw treating physician Patricia Quintana, M.D. for complaints of withdrawal, poor energy, insomnia, and work related stress. Dr. Quintana diagnosed recurrent depression, early, recommended that Plaintiff return to Dr. Novell, his psychotherapist, and took Plaintiff off work through July 6, 2001. AR 227.

Plaintiff saw Denise Novell, Psy.D., on June 26, 2001. He complained that his depression and anxiety were overwhelming and that he had been unable to work since June 13, 2001. AR 324. By July 6, 2001, Plaintiff was feeling better but continued to feel anxiety and some dysphoria. AR 324.

Plaintiff returned to Dr. Quintana on June 29, 2001, frustrated that his improvement was slow. Dr. Quintana encouraged Plaintiff to start antidepressant medication, but he was hesitant due to side effects experienced previously. His disability was extended through July 27, 2001. On July 20, 2001, his disability was extended through August 13, 2001. AR 227.

Plaintiff saw Dr. Quintana on August 13, 2001, and reported that he was feeling better physically but was having problems with short term memory and concentration. Plaintiff started Celexa and his disability was extended through October 1, 2001. AR 228.

On August 21, 2001, Plaintiff saw M.L. Duerksen, M.D., for a Qualified Medical Examination relating to his Worker's Compensation claim. Upon examination, Plaintiff complained of some discomfort in his shoulders. His examination was otherwise unremarkable. During his examination and in reviewing his medical records, there was no indication of any elevated blood pressure values, no diagnosis of or reference to hypertension, and no treatment. Dr. Duerksen did not find medical evidence of any disability or impairment, and opined that Plaintiff's problems were psychiatric in nature. AR 130-133.

On August 31, 2001, Plaintiff saw David M. Reiss, M.D., for a psychiatric evaluation. Dr. Reiss diagnosed major depression, no psychosis, recurrent. He indicated that Plaintiff was temporarily totally disabled but could return to work on or about October 1, 2001. Dr. Reiss questioned whether Plaintiff could return to work as a Correctional Officer, which appeared to be a bad choice of career. Dr. Reiss further opined that Plaintiff's emotional reactions to the inherent demands of his career could not be considered an industrially-related psychiatric injury. AR 137-152.

Plaintiff returned to Dr. Quintana on November 15, 2001. He stopped his medication because he was feeling better, but then began to feel worse. He was instructed to start his Celexa again and his disability was extended through January 1, 2002. AR 228.

Alberto Lopez, M.D., evaluated Plaintiff on November 27, 2001. Dr. Lopez had examined Plaintiff on two previous occasions. Plaintiff was off work on temporary total psychiatric disability from April 1998 through March 1999. An incident in July 1999 rekindled Plaintiff's fears about security on the job. Dr. Lopez diagnosed major depression, single episode,

moderate, chronic. Plaintiff had improved over the last several months, but remained depressed. Dr. Lopez believed that Plaintiff was permanent and stationary, but was left with residual permanent psychiatric disability. Dr. Lopez assessed slight to very slight limitations, and opined that Plaintiff was not precluded from returning to work on a purely psychiatric basis. AR 168-182.

Plaintiff returned to Dr. Quintana on December 18, 2001, and reported that he was hopeful and feeling better. His disability was extended through March 1, 2002. AR 228.

On January 25, 2002, Plaintiff saw Edward M. Tapper, M.D., for an orthopedic evaluation. Plaintiff complained that his headaches, back pain and neck pain were brought on by stress and anxiety. Upon examination, the range of motion in Plaintiff's back was about 80 to 90 percent of normal, and he had soreness and stiffness with rotation  Shoulder range of motion was normal, but Plaintiff complained of soreness. Dr. Tapper opined that Plaintiff probably gets some stress and tension headaches, but that there were no orthopedic injuries to his neck or back. He had no work preclusions from an orthopedic standpoint. AR 153-159.

Plaintiff saw Dr. Quintana on February 21, 2002. He reported highs and lows and that Celexa was working "okay." He continued to feel unable to interact with inmates due to anxiety, and problems with feeling "not sharp" and alert due to concentration and memory deficits. AR 228. His disability was extended through June 1, 2002. AR 228.

Plaintiff saw Dr. Novell twice in February 2002. He reported anxious depression, but indicated that the symptoms were less intense. He was unable to resume his life functioning and unable to return to work. He stated that his problems were related to his work environment at the prison. Dr. Novell encouraged Plaintiff to pursue other work options. AR 325.

On March 21, 2002, Plaintiff was evaluated by Alan J. Drucker, M.D. Plaintiff complained of high levels of anxiety and depression. He diagnosed major depressive disorder recurrent, moderate chronic without full interepisode recovery. Dr. Drucker opined that Plaintiff could not return to work as a correctional officer, but could be retrained to pursue a different career. He recommended that Plaintiff change anti-depressants and be monitored by a psychiatrist. AR 198-202.

1   Plaintiff saw Dr. Quintana on April 23, 2002.  He indicated that he hoped to be retrained
2 and wanted to retire from being a correctional officer.  AR 226.  His depression was recurrent, but
3 he was more hopeful.  Plaintiff was disabled through October 31, 2002.  AR 226.

4   Plaintiff returned to Dr. Quintana on June 25, 2002.  He felt that the Wellbutrin was
5 helping, but he still had ups and downs.  She noted that his depression was improving.  She
6 extended his disability through September 25, 2002.  AR 224.

7   Plaintiff saw Dr. Quintana on August 27, 2002.  His blood pressure was 160/88.  Plaintiff
8 did not want medication but opted to control his blood pressure with diet and exercise.  He was
9 instructed to continue his anti-depressant and his disability was extended to December 31, 2002.
10 AR 223.

11   On September 18, 2002, Samuel M. Sobol, M.D., performed an internal medicine
12 examination.  Dr. Sobol found that Plaintiff was normotensive, and had occipital headache,
13 musculoskeletal, intermittent.  He opined that although Plaintiff may have had transient episodes
14 of elevated blood pressure shortly after acutely stressful events in the workplace, this did not
15 constitute a diagnosis of hypertension.  AR 203-210.

16   Dr. Drucker examined Plaintiff on October 17, 2002, and completed a Mental Disorder
17 Questionnaire Form.  While Plaintiff's memory and cognition were intact, he had difficulty
18 sustaining concentration.  Plaintiff was unable to maintain work pace and was impaired in his
19 ability to relate with others.  Dr. Drucker opined that Plaintiff's prognosis was fair and that
20 significant improvements were unlikely.  AR 214-218.

21   On November 22, 2002, Myron Nathan, M.D., performed an Agreed Psychiatric
22 Evaluation for Plaintiff's Workers' Compensation case.  AR 361.  Plaintiff complained of anxiety,
23 stress, depression, mood swings and anger.  AR 374.  Upon mental status examination, Dr.
24 Nathan did not find Plaintiff to be anxious or depressed.  AR 378.  He diagnosed a history of
25 occupational problems, adjustment disorder with mixed anxiety and depressed mood associated
26 with work inhibition, chronic.  AR 389.  Plaintiff's only limitation would be avoiding repetitive
27 undue emotional stress and he recommended that Plaintiff be retrained to pursue a different
28 career.  AR 386, 399.

In December 2002, Dr. Quintana reported that Plaintiff had a good response to Wellbutrin. Plaintiff was optimistic about his future, but was clear that it would not involve prison work. Dr. Quintana again extended his disability through June 1, 2003. AR 221.

On February 23, 2003, Plaintiff saw Diane W. Kecskes, M.D., for a psychiatric evaluation. Plaintiff complained of depression, anxiety, memory loss, mental and emotional fatigue, headaches, and neck and shoulder pain. Plaintiff reported that he could perform all activities of daily living, but was forgetful and didn't like to be around people. Dr. Kecskes diagnosed post traumatic stress disorder ("PTSD"). She opined that Plaintiff may have difficulty maintaining regular attendance in the work place, significant anxiety that may result in emotional deterioration in worklike settings, and may be unable to perform work activities on a consistent basis. There was evidence of an impairment in concentration, persistence and pace, and although Plaintiff could perform simple oral and written instructions, he would need additional supervision if performing stressful or anxiety-provoking activities. Plaintiff may have problems accepting instructions from supervisors, and he may have problems completing a normal workday or workweek without interruptions from his symptoms. AR 276-279.

On March 10, 2003, Plaintiff saw Edward J. O'Neill, M.D. His physical examination was normal. He diagnosed multiple physical complaints which were the somatic manifestations of his psychological problems. AR 302-316.

On June 16, 2003, State Agency physician Glenn Ikawa, M.D., completed a Psychiatric Review Technique form. Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence and pace. Plaintiff had mild to moderate difficulties in maintaining social functioning. He retained the ability to complete simple, repetitive tasks. AR 280-295. This opinion was affirmed on September 26, 2003. AR 280.

Also on June 16, 2003, Dr. Ikawa completed a Mental Residual Functional Capacity Assessment form. He opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, but could complete simple, repetitive tasks and relate and adapt. AR 296-299.

On September 3, 2003, Dr. Novell wrote a letter to Social Security indicating that she had seen Plaintiff four times since May 16, 2003. He presented as sad and somber, but was able to follow simple directions. He has been unable to receive his medications since April 2003 because he cannot afford them. AR 319. In a Mental Source Statement, Dr. Novell indicated that Plaintiff's ability to attend and concentrate was fair, as was his ability to work without supervision. His ability to interact with the public, coworkers and supervisors was fair. His ability to adapt to changes in the workplace was fair. She opined that Plaintiff could not return to his previous employment, but that he could be retrained for work in a different setting, where his prognosis would be fair to good. AR 320-321.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairment of adjustment disorder with mixed anxiety and depressed mood associated with work inhibition, chronic. AR 13. The ALJ further determined that Plaintiff could perform work without exertional limitations in an environment that precludes repetitive, undue emotional stress. AR 13. In assessing Plaintiff's subjective complaints, the ALJ found that they were not entirely credible and not supported by the medical evidence. AR 17. Finding that Plaintiff's nonexertional impairments did not significantly affect his ability to perform a full range of unskilled work, the ALJ applied the Medical-Vocational Guidelines ("Grids"), Section 204.00, to find Plaintiff not disabled. AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995

(9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (adjustment disorder with mixed anxiety and depressed mood associated with work inhibition, chronic) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform substantially all of the full range of work with no exertional limitations. AR 19.

Plaintiff contends that the ALJ erred by applying the Grids instead of taking testimony from a Vocational Expert ("VE").

## DISCUSSION

Plaintiff argues that the ALJ should have taken the testimony of a VE to determine the impact of his non-exertional impairment, i.e., his preclusion from working in an environment with repetitive, undue emotional stress, on the occupational base.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

Here, the ALJ determined that Plaintiff suffered from an adjustment disorder with mixed anxiety and depressed mood associated with work inhibition, chronic. AR 13. In his RFC finding, the ALJ determined that Plaintiff could perform work at all exertional levels, but was precluded from working in an environment of repetitive, undue emotional stress. AR 13. Rather than hear testimony from a VE to determine the impact of Plaintiff's non-exertional limitation on the occupational base, the ALJ determined that the limitation did not significantly limit the range of work Plaintiff could perform and applied Rule 204.00 of the Grids to find Plaintiff not disabled. AR 18.

The ALJ properly relied on the Grids. Pursuant to *Desrosiers*, the ALJ determined that a preclusion from working in an environment with repetitive, undue emotional stress, where Plaintiff could perform work at all exertional levels, did not significantly affect his ability to perform a full range of unskilled work so as to preclude reliance on the Grids. Such a conclusion is certainly logical given that Plaintiff could perform unskilled work at every exertional level.

10

Indeed, the evidence suggests that Plaintiff's problems were related to his job as a correctional officer, rather than working in general. Plaintiff told both Dr. Quintana and Dr. Novell that his problems were related to his occupation and that he hoped to be retrained. AR 226, 325. Dr. Nathan, who examined Plaintiff and thoroughly reviewed his medical records, opined that Plaintiff's only limitation would be avoiding repetitive, undue emotional stress and recommended that he be retrained to pursue a different career. AR 386, 399. Even Dr. Novell, Plaintiff's treating psychologist, believed that although Plaintiff could not return to his previous employment, he could be retrained for work in a different setting, where his prognosis would be fair to good. AR 320-321.

Plaintiff argues that based on SSR 85-15, the Grids were not intended to include a limitation such as Plaintiff's. SSR 85-15 provides:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

The ALJ did not find any limitations in these areas. Therefore, Plaintiff was able to perform unskilled work at all levels of exertion, and the ALJ properly determined that his limitation did not significantly erode the occupational base so as to preclude reliance on the Grids.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Charles Bailey.

1    These findings and recommendations will be submitted to the Honorable Anthony W.
2  Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after
3  being served with these findings and recommendations, the parties may file written objections
4  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
5  and Recommendations."  The parties are advised that failure to file objections within the specified
6  time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153
7  (9th Cir. 1991).

9    IT IS SO ORDERED.
10   Dated:   **September 7, 2006**                **/s/ Dennis L. Beck**
  3b142a                                UNITED STATES MAGISTRATE JUDGE